THE STATE EX REL. NIGHTINGILL, PETITIONER, *v.* BOARD OF COMMISSIONERS OF STOREY COUNTY, RESPONDENT.

The 24th Section of Article XVII. of the Constitution prohibits taxation beyond one and one-quarter per cent. for State purposes during the first three years of its existence.

The 3d Section of Article IX. discussed and commented on. It does not qualify the 24th Section of the XVIIth Article.

Tax levied under the law in question is illegal and void, but the bonds authorized to be issued are legal and valid debts against the State if negotiated.

This petition for a mandamus was an original proceeding in the Supreme Court.

*Clayton & Clarke*, Counsel for Petitioner.

*D. Corson*, District Attorney of Storey County, Counsel for Respondent.

State *ex rel.* Nightingill *v.* Board of Commissioners of Storey County.

Points made by Petitioner:

Was it not the duty of the County Commissioners to make the levy, without stopping to inquire whether it was or not a constitutional law, which required them to act.

The Constitution authorizes the creation of a debt of three hundred thousand dollars for ordinary State purposes, and of an unlimited amount for extraordinary purposes, such as repelling invasion, etc., and requires all debts created, of whatever character, to be paid within twenty years. The power to raise revenue to pay interest and principal of all such debts is conferred in Section 3 of Article IX. of the Constitution. This, independent of, and in addition to, the power to raise one per cent. for ordinary State purposes.

The one hundred thousand dollars issued in bonds, when added to the other indebtedness of the State, only makes two hundred and fifty thousand dollars, or less than the constitutional limit of three hundred thousand dollars.

The debt created is an extraordinary debt, clearly authorized by 3d Section of the IXth Article of the Constitution.

Points made by Respondent:

Section 24 of Article XVII. of the Constitution is not qualified or restricted in its operation by any clause in the same instrument.

The power of the Legislature to contract debts to an unlimited extent to raise money for such extraordinary expenses as are mentioned in the Constitution, is admitted; and the power and duty to levy a tax to pay such debts is admitted, but subject to this qualification. That the whole annual State tax for three years after the adoption of the Constitution shall not exceed one and a quarter per cent.

Opinion by BEATTY, J., full Bench concurring.

The Legislature of the State of Nevada, at its last session, passed a law for the issuance and sale of State bonds to the amount of one hundred thousand dollars, to raise a fund for the purpose of encouraging enlistments and paying bounties, etc., to volunteer soldiers. The same Act provides that a tax

of twenty-five cents on each one hundred dollars' worth of taxable property shall be levied to pay the interest and principal of this debt.  By a general law of the State the County Commissioners of each county are required annually to assess all taxes that are to be raised during the current year, whether for county or State purposes.  When the Commissioners of Storey County made their annual assessments they failed to assess the tax of one-fourth per cent., for the payment of principal and interest on the bonds just mentioned.  An alternative mandamus was issued by this Court, directing them to make such levy, or show cause why they have not done so.

The Commissioners now come in and for cause say the law requiring the levy of this particular tax is unconstitutional and void, for the reason that the Legislature, before the passage of this Act, had already provided for a levy of ninety-five cents on the one hundred dollars for ordinary State purposes; five cents for university and school purposes, and twenty-five cents for territorial debt.  That the Board had assessed these taxes, and they constituted the limit beyond which the Legislature could not go in levying taxes for State purposes.

The only question for this Court to determine is, whether the law raising the twenty-five cent tax in question is or is not constitutional.  The 24th Section of the XVIIth Article of the Constitution is in these words:

" For the first three years after the adoption of this Constitution, the Legislature shall not levy a tax for State purposes exceeding one per cent. per annum on the taxable property in the State; provided the Legislature may levy a special tax not exceeding one-fourth of one per cent. per annum, which shall be appropriated to the payment of the indebtedness of the Territory of Nevada, assumed by the State of Nevada, and for that purpose only, until all of said indebtedness is paid."

This is, if taken by itself, a clear prohibition of taxation beyond one and a quarter per cent. for State purposes, during the first three years of the existence of the State.  The tax is undoubtedly for State purposes, and levied within the period mentioned.

The next question to be considered is, whether any other section of the Constitution qualifies this section and permits

the Legislature in such case as the present to levy a tax beyond the one dollar and twenty-five cents on the one hundred dollars mentioned in the section quoted. The only other section of the Constitution bearing on this point is the 3d Section of the IXth Article. That section is divided into three sentences. Each sentence seems to embrace a different subject, and we will examine each consecutively. The first sentence is in these words: "For the purpose of enabling the State to transact its business upon a cash basis from its organization, the State may contract public debts; but such debts shall never in the aggregate, exclusive of interest, exceed the sum of three hundred thousand dollars, except for the purpose of defraying extraordinary expenses as hereinafter mentioned." This sentence confers the power to contract a debt or debts to an amount not exceeding three hundred thousand dollars, and does not in any way limit the power of the Legislature, or prescribe in what manner such debt or debts shall be paid or provided for, either principal or interest. This power does not in any way conflict with the limitations on the power of taxation, contained in the 24th Section of the XVIIth Article. The only clause in this sentence which is at all ambiguous is the latter clause, in these words: "Except for the purpose of defraying extraordinary expenses, *as hereinafter mentioned.*" Here is an exceptional case provided for when it may be lawful to contract debts beyond three hundred thousand dollars. But what does the expression "*as hereinafter mentioned*" mean? Does it mean debts contracted *in the manner* hereinafter mentioned? Or does it mean *such* extraordinary debts "as are hereinafter mentioned?" To make the sentence clear and intelligible, several words must be interpolated. The convention may have meant either of two things, which may be expressed thus—the interpolated words in each sentence being italicised: "Except for the purpose of defraying *those* extraordinary expenses *which are* hereinafter mentioned." Or it may read: "Except for the purpose of defraying extraordinary expenses *when other debts may be contracted in the manner* hereinafter mentioned." The difficulty in coming to a conclusion about the true meaning of this clause will be apparent when we come to examine subsequent sentences in this section.

The second sentence is in these words : "Every such debt shall be authorized by law for some purpose or purposes to be distinctly specified therein ; and every such law shall provide for levying an annual tax sufficient to pay the interest semi-annually, and the principal within twenty years from the passage of such law, and shall specially appropriate the proceeds of said taxes to the payment of said principal and interest; and such appropriation shall not be repealed, nor the taxes be postponed or diminished until the principal and interest of said debts shall have been wholly paid." Taking this sentence *only* in connection with the first, and it would seem the Legislature might borrow three hundred thousand dollars for ordinary purposes and in any manner they saw fit. They might borrow any sum beyond three hundred thousand dollars for extraordinary expenses, but if the borrowing was for extraordinary expenses, two things were necessary to be done as conditions precedent to the borrowing.

*First*—The Act authorizing the creation of the debt must specifically mention the purpose or purposes for which it is to be created.

*Second*—It must provide a specific tax especially set apart for that debt, sufficient in amount to pay the interest semi-annually, and extingush the principal within twenty years. If these conditions precedent are performed, then it would appear that the indebtedness might be incurred for any object of extraordinary expense which the Legislature are not specially prohibited in other sections from incurring. There would be no difficulty in interpreting this section if it only contained these two sentences.

The third sentence is in these words: "Every contract of indebtedness entered into or assumed by or on behalf of the State, when all its debts and liabilities amount to said sum before mentioned, shall be void and of no effect, except in cases of money borrowed to repel invasion or suppress insurrection, defend the State in time of war, or if hostilities be threatened, provide for the public defense."

This sentence, taken literally, excludes the possibility of allowing the State debt in any instance to exceed three hundred thousand dollars, unless the excess be created for the

purpose of *repelling invasion, suppressing insurrection,* etc. If such is the meaning, then the conditions precedent to the borrowing money for *extraordinary expenses,* as mentioned in the second sentence, has reference only to money borrowed for the purpose of being used to repel invasion, etc.    The language of the whole section is capable of such interpretation, and possibly such was the intention of the Convention.    Yet it would appear absurd to allow the Legislature to borrow three hundred thousand dollars for ordinary purposes, without any restrictions as to the mode of providing for its payment, and yet deny to them the right to borrow a single dollar for the defense of the State, in case of the most sudden emergency arising from invasion, insurrection or war, until the Legislature had first considered and devised the ways and means to pay debt and principal, and passed the necessary law for raising those means.    It is, to say the least, an extraordinary limitation on legislative powers.

Whether the Convention meant to provide for two or three classes of State debts it may not be necessary to determine in settling this question.    It may have been intended to provide for three classes of debts:

*First*—Three hundred thousand dollars, with no restriction as to the manner or time of borrowing or paying.

*Second*—Debts for any extraordinary expense, not to be contracted except upon the conditions precedent, that the Act authorizing the debt should specify the purposes for which it was contracted, and provide the necessary taxation to pay semi-annual interest and extinguish the principal in twenty years.

*Third*—Debts contracted to repel invasion, etc.

If it was intended to provide for three classes, doubtless it was intended that the Legislature should be as unrestricted in the mode and manner of contracting the third as the first named class of debts.    But it may have been the intention of the framers of the Constitution to provide for only two classes of debts.    The first class of three hundred thousand dollars, as we have mentioned; the second class debts for such *extraordinary expenses as might be incurred in repelling invasion,* etc.

If the Constitution provides for only two classes of debts, the conditions precedent above mentioned apply to this second class only. If this section provides for three classes of debts, there is no pretext for claiming a conflict between its provisions and those of Section 24, Article XVII. The State might borrow any amount of money for defense against invasion, insurrection or other hostility, without interference with the limitation or taxation referred to. That limitation on the right of taxation would not materially impair the credit of the State or lessen its ability to borrow, if it made a pledge of future taxation and resources.

If, however, the Constitution provides for only two classes of debts, then no money to protect the State, however urgent the necessity, can be borrowed (after the three hundred thousand dollars limit has been reached), without providing the means to pay all, principal and interest, in twenty years. And it is argued that the State cannot borrow anything to repel invasion, etc., without coming in conflict with Article XVII., Section 24. That the one and a quarter per cent. allowed by that section to be levied, is all appropriated to special purposes and cannot be set apart for payment of interest, etc., on money borrowed to repel invasion; and that it could not have been the intention of the Convention to so tie up the State and render it helpless for three years. The premises in this argument are not altogether correct. The whole one dollar and twenty-five cents of taxes allowed by section 24, to be collected for State purposes, are appropriated for this year, and if only two classes of debt are provided for, it would be impossible before the first day of January next to borrow any money for defense of the State without exceeding the one dollar and twenty-five cents limitation in section 24. This state of things would not necessarily continue three years. Ninety-five cents of the one dollar and twenty-five cents will be under the entire control of the next Legislature (if the debt for which it is pledged is paid this year, as it probably will be), and they may, if any emergency arises, set apart the whole or any portion of that ninety-five cents on the hundred dollars to pay interest, and gradually extinguish the principal of a debt contracted to repel invasion or suppress insurrection.

They could leave the ordinary expenses of the Government to be paid by poll taxes, license taxes, and borrowing within the three hundred thousand dollars, etc. The whole argument seems, however, better calculated to throw doubt upon the correctness of the policy which governed the Convention, than upon their intentions as expressed in the limitation on the taxing power. The limitation in the 24th Section of the XVIIth Article of the Constitution is expressed in the broadest and most comprehensive language. Although the 3d Section of the IXth Article is somewhat obscure in its meaning, we see nothing therein which necessarily restricts the operation of the section in Article XVII. just referred to. So much of the law under consideration as provides for the levy of the twenty-five cent tax, is unconstitutional and void. This, however, does not affect the validity of the bonds. The money attempted to be raised was for a legitimate purpose—one for which the Legislature might lawfully appropriate money. It does not appear that the Legislature has passed the limit of three hundred thousand dollars, and if they have not passed that limit, the bonds, if negotiated, would be a binding debt on the State, to be paid as any other liability. The defendants were right in the course they pursued. The mandamus is dismissed with costs.